IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INSUREMAX INSURANCE AGENCIES, INC., ARMCO INSURANCE AGENCY, INC., and WELSON HOLDINGS, INC., d/b/a A-MAX, <br><br>    Plaintiffs,<br>v.<br><br>SHANZE ENTERPRISES, INC., d/b/a BAJA AUTO INSURANCE,<br><br>    Defendant. | § § § § § § § § § § § § | No. 3:13-CV-1231-M |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are five motions filed by Plaintiffs Insuremax Insurance Agencies, Inc., Armco Insurance Agency, Inc., and Welson Holdings, Inc. (collectively "Plaintiffs"): Plaintiffs' Motion to (1) Dismiss Counterclaim for Tortious Interference [Docket Entry #10]; (2) Dismiss Counterclaim Seeking Declaratory Judgment on Cancellation of A-MAX Trademark [Docket Entry # 11]; (3) Dismiss Counterclaims Seeking Declaratory Judgment of Invalidity and Non-Infringement of the Term A-MAX [Docket Entry #11]; (4) Strike Affirmative Defenses [Docket Entry #11]; and (5) Dismiss Request for Attorney's Fees [Docket Entry #11]. For the reasons set forth below, the Motions are **GRANTED**.

### I. BACKGROUND

This action concerns claims for trademark infringement and unfair competition. Plaintiffs and Defendant Shanze Enterprises, Inc., d/b/a Baja Auto Insurance ("Baja") sell automobile and homeowner insurance policies. Plaintiffs sued Baja in state court, claiming its use of a specific red and yellow color scheme constituted trade dress infringement and unfair competition.

Baja removed the case to this Court [Docket Entry #1], and filed an Amended Answer, asserting six counterclaims and multiple affirmative defenses [Docket Entry #9]. In the first five counterclaims, Baja sought cancellation of Plaintiffs' A-MAX mark and A-MAX trade dress[1] and declaratory judgments of invalidity and non-infringement of the mark and trade dress. In the sixth counterclaim, Baja asserted a state law claim for tortious interference with contract, arguing that Plaintiffs forced United Auto Insurance ("UAI"), an insurance underwriter, to cancel its contract with Baja. Plaintiffs move to dismiss Baja's counterclaims for tortious interference and those for declaratory judgment relating to the A-MAX mark. They also move to dismiss Baja's request for attorney's fees, and to strike a number of Baja's affirmative defenses.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A court must determine whether it has proper subject matter jurisdiction over every claim and counterclaim. *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 672 (5th Cir. 1978). "[T]he [claimant] constantly bears the burden of proof that jurisdiction does exist." *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 879 (N.D. Tex. 1998) (Cummings, J.).

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In analyzing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court accepts

---

[1] United States Trademark No. 3,506,940 covers the term "A-MAX" ("the A-MAX mark"). The A-MAX trade dress refers to a yellow and red color scheme listed on the supplemental register as United States Registration No. 4,200,154 ("the A-MAX trade dress"). Plaintiffs also refer to their "specially painted Volkswagen Beetles," for which they have received a service mark, United States Registration No. 177, 199 ("the Beetle mark"). Plaintiffs do not assert the A-MAX mark or the Beetle mark against Baja.

all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A satisfactory pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While a court must accept all of the claimant's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S.at 678 (quoting *Twombly*, 550 U.S. at 555).

Rule 12(f) authorizes courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

### III. ANALYSIS

#### A.  Counterclaim for Tortious Interference

The single issue raised by the first Motion is whether the Court has subject matter jurisdiction over Baja's state law counterclaim for tortious interference.  Baja contends the Court can exercise jurisdiction over the counterclaim based on its relationship to the original claims, through both the supplemental jurisdiction statute, 28 U.S.C. § 1367, and a grant of original jurisdiction under 28 U.S.C. § 1338(b).  The Court disagrees.

##### i.  Supplemental Jurisdiction

Courts may exercise supplemental jurisdiction over state law claims if they form part of the "same case or controversy" with a claim over which the court has original jurisdiction.  *See* 28 U.S.C. § 1367(a).  "The question under § 1367(a) is whether the supplemental claims are so related to the original claims . . . that they 'derive from a common nucleus of operative fact.'"

*Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 294 (5th Cir. 2010) (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact.").

Baja's counterclaim is not sufficiently related to the original claim to satisfy § 1367(a). Resolving Plaintiffs' infringement claim requires a two-step analysis to determine: (1) whether the trade dress qualifies for protection, and (2) whether the trade dress has been infringed. *Blue Bell Bio–Medical v. Cin–Bad, Inc.,* 864 F.2d 1253, 1256 (5th Cir. 1989). Facts relevant to the inquiry include evidence of the validity of Plaintiffs' trademarks and of Baja's use of protected materials on its buildings and in its advertisements. On the other hand, to prevail on its tortious interference counterclaim, Baja must prove: (1) the presence of a contract; (2) willful and intentional interference by Plaintiffs; (3) proximate causation; and (4) actual damages. *See Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 664 (Tex. 1990). Relevant facts include evidence of Baja's contractual relationship with UAI, and Plaintiffs' alleged pressure on UAI to cancel the contract.

To the extent these claims overlap at all, they do so only at the margins; they do not share a common nucleus of *operative* facts. Baja claims that Plaintiffs' alleged interference in the contract with UAI demonstrates Plaintiffs' belief that the companies are competitors. According to Baja, this belief is relevant to Plaintiffs' infringement claim, for which it must prove a likelihood of confusion between the marks. The Court doubts that Plaintiffs would rely on their own alleged misconduct to buttress their infringement claim. Even if they do, this is a peripheral point that joins the claims only at their edges.

A history of business disputes between Baja and Plaintiffs—including Plaintiffs' alleged "longtime scheme to put Baja out of business"—is likewise insufficient to establish a common nucleus of operative facts between the claims.  *See, e.g.*, *CheckPoint Fluidic Systems Intern., Ltd. v. Guccione*, No. 10-CV-4505, 2012 WL 195533, at *5–6 (E.D. La. Jan. 23, 2012) (background information about the relationship between two parties is not an operative fact that satisfies § 1367(a)); *Council of Unit Owners of the Wisp Condo, Inc. v. Recreation Indus., Inc.*, 793 F. Supp. 120, 122 (D. Md. 1992) ("[T]he ongoing and dispute-ridden relationship between the parties [does not] create a sufficient basis for the exercise of supplemental jurisdiction."); *Burgess v. Omar*, 345 F. Supp. 2d 369, 370–72 (S.D.N.Y. 2004) ("[W]hile facts relevant to one claim might provide background with respect to the other, more is required.").  Baja argues that *NatureSweet, Ltd. v. Mastronardi, Ltd.*, No. 3:12-CV-1424-G, 2013 WL 460068 (N.D. Tex. Feb. 6, 2013) (Fish, J.) supports the claim that the "ongoing scheme" between the parties satisfies "relatedness" requirement of § 1367(a).  It does not.

In *NatureSweet,* Judge Fish held that a court could exercise supplemental jurisdiction over a defendant's counterclaim for tortious interference with contract, but only because it was causally related to an existing claim for trademark infringement.  *NatureSweet*, 2013 WL 460068, at *6–7.  The defendant there had formed an exclusive supply agreement with the original owner of the trademarks in question.  The original owner, under pressure from the plaintiff, cancelled the supply agreement with the defendant and assigned its trademark rights to the plaintiff.  Since the cancelled supply agreement and subsequent assignment of rights led directly to the defendant's alleged acts of trademark infringement, the court found the two claims "sufficiently connected" to form one case.  *Id*. at *7.  Even with this "causal" connection, however, the issue of supplemental jurisdiction was a "close question."  *Id*. at *6.

In this case, there is no causal relationship between Baja's counterclaim and Plaintiffs' trade dress infringement claim. At the core of the original claim is Baja's allegedly unauthorized use of protected material. In contrast, the counterclaim concerns only Plaintiffs' alleged role in the termination of Baja's contract with UAI. Nothing in Baja's pleading suggests that one caused the other. The claims arose independently, and do not implicate one another. Thus, Baja's counterclaim for tortious interference is not sufficiently related to Plaintiffs' infringement claim for this Court to exercise supplemental jurisdiction over it.

### ii.     Original Jurisdiction

The Court cannot, as Baja urges, exercise original jurisdiction over the counterclaim under 28 U.S.C. § 1338(b). Section 1338(b) grants courts original jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws." 28 U.S.C. § 1338(b).

As a threshold matter, it is not immediately clear that a claim for tortious interference with contract qualifies as an unfair competition claim, as defined by § 1338(b). Arguing that it does, Baja cites *American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3 (5th Cir. 1974). *American Heritage* described the law of unfair competition as the "umbrella for all statutory and non-statutory causes of action arising out of [dishonest] business conduct." 494 F.2d at 14. But *American Heritage* addressed a claim labeled as one for unfair competition, not a claim for tortious interference. Furthermore, at least one court has found that § 1338(b) does not apply to all "business conduct" claims conceivably covered by the broad language of *American Heritage*. *See Schuchart & Assocs. v. Solo Serve Corp.*, No. SA-81-CA-5, 1983 WL 1147, at *21 (W.D. Tex. June 28, 1983) (holding that claims of unjust enrichment do not qualify as claims for unfair competition under § 1338(b)). Indeed,

this Court is aware of no case construing tortious interference with contract as a claim for "unfair competition" under § 1338(b). Ultimately, however, the Court need not resolve this issue because Baja's counterclaim is insufficiently related to the infringement claim to satisfy the remaining requirement of § 1338(b).

The Fifth Circuit has not articulated the precise standard for determining when claims are related for the purpose of § 1338(b), but its analysis seems to parallel the relatedness inquiry in the context of supplemental jurisdiction. *See River Brand Rice Mills, Inc. v. Gen. Foods Corp.*, 334 F.2d 770, 772–73 (5th Cir. 1964); *Warehouse Groceries Mgmt., Inc. v. Sav-U-Warehouse Groceries, Inc.*, 624 F.2d 655, 658 (5th Cir. 1980). In *River Brand Rice Mills*, the Fifth Circuit suggested that Congress intended to incorporate the supplemental jurisdiction relatedness standard when it codified § 1338(b). 334 F.2d at 772. Therefore, it based its analysis of § 1338(b) on *Hurn v. Oursler*, 289 U.S. 238 (1933), the Supreme Court's then-controlling case on supplemental jurisdiction. From *Hurn*, the court concluded that to be related, as defined by § 1338(b), claims must be based in facts that are "substantially identical" or that "overlap considerabl[y]." 334 F.2d at 772.

In *United Mine Workers of America. v. Gibbs*, the Supreme Court amended *Hurn*'s "considerable overlap" standard, holding that courts may exercise supplemental jurisdiction only when the claims "derive from a common nucleus of operative fact." 383 U.S. at 725. Congress subsequently codified the *Gibbs* standard for supplemental jurisdiction in 28 U.S.C. § 1367. Since then, a number of courts have applied the *Gibbs* relatedness standard when analyzing § 1338(b). *See Waterloo Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 404 (D.N.J. 1999) ("A patent claim is related [to a claim for unfair competition] if it is derived from a common nucleus of operative fact."); *Rite-Hite Corp. v. Kelley Co., Inc.*, 99

F.R.D. 332, 334 (E.D. Wis. 1983) (same); *Leon Finker, Inc. v. Schlussel*, 469 F. Supp. 674, 679 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1288 (2d Cir. 1979) (same).  A district court in the Fifth Circuit has reached the same conclusion.  *See J.M. Huber Corp. v. Positive Action Tool of Ohio Co., Inc.*, 879 F. Supp. 705, 710 (S.D. Tex. 1995) (holding that claims are related under § 1338(b) if they derive from a "common nucleus of operative facts").

The Fifth Circuit itself, however, has stopped short of explicitly applying *Gibbs* to § 1338(b).  In *Warehouse Groceries*, the Fifth Circuit referenced *Gibbs* before holding that a district court should have exercised jurisdiction over a state law unfair competition claim related to a federal trademark claim.  624 F.2d. at 658.  But it is not clear whether the *Warehouse* court based its decision on a finding of supplemental jurisdiction or on § 1338(b).

Here, the original claims and Baja's counterclaim are insufficiently related to satisfy § 1338(b), regardless of whether the statute requires claims with considerable factual overlap, *see River Brand Rice Mills,* 334 F.2d at 772–73, or claims arising from a common nucleus of operative fact, *see Gibbs*, 383 U.S. at 725.  Baja's counterclaim addresses the formation and termination of its contract with UAI.  Plaintiffs' infringement claim, on the other hand, involves Baja's alleged use of Plaintiffs' trade dress.  The facts necessary to prove these claims do not overlap considerably, nor do the operative facts arise from a common nucleus.  This Court may not, therefore, exercise original subject matter jurisdiction over the tortious interference counterclaim pursuant to § 1338(b).  Thus, Plaintiffs' Motion to Dismiss the counterclaim is **GRANTED**.

**B. Counterclaims Seeking Cancellation of A-MAX Mark and Declaratory Judgment of Non-Infringement and Invalidity**

"A petition to cancel a registration of a mark" may be maintained "by any person who believes that he is or will be damaged . . . by the mark." 15 U.S.C. § 1064.  "To establish

standing" for a cancellation action, the claimant "need only plead and prove facts showing a 'real interest' in the proceedings and a 'reasonable' basis for its belief of damage." *Farah v. Pramil S.R.L.*, 300 F. App'x 915, 917 (Fed. Cir. 2008) (quoting *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999)). "The purpose" of the standing requirement is to "prevent litigation where there is no real controversy between the parties." *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028–29 (Fed. Cir. 1982).

Baja has not pleaded facts showing a real interest in cancelling the A-MAX mark or a reasonable basis to believe it is damaged by the mark's continued existence. Although Plaintiffs reference the A-MAX mark in the Background section of their Original Petition, they base all of their causes of action exclusively on Baja's alleged infringement of the A-MAX trade dress. The trade dress registration consists only of a red and yellow color scheme, and does not include the term A-MAX. Nowhere do Plaintiffs accuse Baja of infringing the A-MAX mark, nor do they give any indication that they plan to assert the mark against Baja in the future.

In the absence of a pending or threatened action, a claimant can establish a real interest when it reasonably believes its trademark is confusingly similar to the mark it seeks to cancel. *See Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1326 (1983). But Baja does not allege that the terms A-MAX and Baja, by themselves, are confusingly similar. In fact, it seeks a judgment declaring that they are not.

Baja claims instead that its "real interest" is rooted in the intertwined nature of the A-MAX trade dress and the A-MAX mark. According to Baja, "[t]he similarity of the terms BAJA and A-MAX is an issue because each term forms part of the overall commercial impression of the trade dress in which it is used." *Def.'s Resp*. 13. It is true that Plaintiffs display the A-MAX mark in combination with the trade dress, and that similarity of marks is "determined by

considering the overall impression by the mark as a whole, rather than simply comparing individual features of the mark." *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 504–05 (5th Cir. 1980). In context, however, this means only that the fact finder must decide whether the trade dress has acquired secondary meaning sufficient to justify legal protection, or whether the color scheme distinguishes Plaintiffs from its competitors only in conjunction with the A-MAX mark. It does not follow that Baja acquires an interest in the validity of the A-MAX mark simply because it has been accused of infringing the A-MAX trade dress. Baja cites no authority, and the Court is aware of none, that would extend the concept of standing that far.

For similar reasons, Baja lacks standing to seek a declaratory judgment of invalidity and non-infringement of the A-MAX mark. In the context of declaratory judgments, courts have jurisdiction only over disputes presenting "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). There is no immediate dispute regarding the A-MAX mark. Plaintiffs do not assert the mark against Baja, and express no intention of doing so. The only disputes properly before the Court are Plaintiffs' claims stemming from Baja's alleged infringement of the A-MAX trade dress. Thus, Plaintiffs' Motions to Dismiss the counterclaims for cancellation and for a declaratory judgment of invalidity and non-infringement of the A-MAX mark are **GRANTED**.

## C.  Affirmative Defenses and Request for Attorney's Fees

Plaintiffs move to strike the a number of Baja's affirmative defenses, including the assertion that (1) the trade dress "is not confusingly similar," (2) the marks do not have a "single source," and (3) the trade dress is "descriptive[]," lacks "secondary meaning," is "primarily functional," and "is not inherently distinctive." *Pls.' Mot.* 2–6. According to Plaintiffs, these

defenses are merely "negative defenses" that negate an element of Plaintiffs' prima facie case, not "affirmative defenses" that offer a justification for Baja's actions. *Id.* Consequently, Plaintiffs claim they should be stricken as "redundant" and "immaterial" pursuant to Rule 12(f). *See F.T.C. v. Think All Pub. L.L.C.*, 564 F. Supp. 2d 663, 665–66 (E.D. Tex. 2008) (striking a negative defense under Rule 12(f)). Baja acknowledges that the "affirmative defenses" in question overlap with its denials, and seeks leave to amend its Answer to remove them. Plaintiffs also move to dismiss Baja's request for attorney's fees under the Texas Declaratory Judgments Act ("TDJA"). Baja concedes such a request is inappropriate in this federal action.

Plaintiffs' Motion to Strike the "affirmative defenses" asserted in ¶¶ 29–31, 33–35, and 38 of the Amended Answer, and to dismiss the prayer for attorney's fees under the TDJA, is **GRANTED**.

### III. CONCLUSION

Baja has failed to establish that this Court has either original or supplemental jurisdiction over its counterclaim for tortious interference, or that it has standing to assert its counterclaims for cancellation of the A-MAX mark or for a declaratory judgment of non-infringement or invalidity of the A-MAX mark. Those counterclaims are therefore **DISMISSED without prejudice**. Plaintiffs concede the challenged affirmative defenses and request for attorney's fees under the TDJA should be removed. Accordingly, the request for attorney's fees is **DISMISSED**, and the affirmative defenses are **STRICKEN**. As set forth in the Court's July 17, 2013, Scheduling Order, the parties may freely amend their pleadings without seeking leave until October 25, 2013.

**SO ORDERED**.

August 7, 2013.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS